UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKEIYA RICE,
O/B/O J.R, a minor,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil No. 12-14438
District Judge Sean F. Cox
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff Lakeiya Rice ("Plaintiff") brings this action on behalf of her minor son under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Childhood Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that in lieu of granting Plaintiff's Motion for Summary Judgment at this time, the case be remanded to the administrative level pursuant to the sixth sentence of § 405(g)[1].

---

[1] Under 42 U.S.C. § 405(g), a "Sentence Six" remand (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." *Melkonyan v. Sullivan*, 501 U.S. 89, 97–99, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). The reviewing court does not grant summary judgment, but merely remands for further review. *Id.* The court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g)." *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). However, the court retains

## PROCEDURAL HISTORY

Plaintiff, proceeding on behalf of her minor son ("Claimant"), applied for Childhood Supplemental Security Income on April 20, 2009, alleging disability as of January 2, 2009 (Tr. 77-79). After the initial denial of the claim on September 10, 2009, Plaintiff requested an administrative hearing, held on March 9, 2011 in Falls Church, Virginia (Tr. 45, 65-68). Administrative Law Judge ("ALJ") Elliott Bunce presided (Tr. 45). Claimant (Tr. 48-51) and Plaintiff (Tr. 52-62) testified by video conference from Flint, Michigan (Tr. 47). On March 29, 2011 ALJ Bunce found Claimant not disabled (Tr. 26). On August 27, 2012, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision on October 6, 2012.

## BACKGROUND FACTS

Claimant, born October 21, 2001, was nine when ALJ Bunce issued his decision (Tr. 26, 77). The application for benefits alleges disability due to attention deficit hyperactivity disorder ("ADHD") and bipolar disorder (Tr. 94).

### A. Claimant's Testimony

Claimant offered the following testimony:

He was just short of his 10th birthday and currently in third grade (Tr. 49). He lived with his mother, father and six younger siblings (Tr. 49). He shared a bedroom with two other brothers (Tr. 50). He described his bedroom as neat (Tr. 50).

### B. Plaintiff's Testimony

Plaintiff offered the following testimony:

---

jurisdiction in a Sentence Six remand, and enters final judgment only "after post-remand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer,* 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); see also *Melkonyan*, 501 U.S. at 98.

Claimant's stepfather did not live with the family but helped Plaintiff care for the children (Tr. 52). None of Claimant's family members received disability benefits (Tr. 53). Claimant repeated kindergarten but was not currently in special education (Tr. 53).

Plaintiff recently requested an evaluation for a possible individualized education program ("IEP") for math, reading, and comprehension, but had not yet received the results (Tr. 53). Claimant saw a therapist twice a month and a doctor once a month at Catholic Charities for ADHD and Asperger's Syndrome (Tr. 54). Claimant did not experience psychotropic medication side effects and was doing "pretty good" in school (Tr. 54). However, he experienced "real difficulties in math and reading" (Tr. 54). Claimant would typically sit for an entire hour attempting to complete math assignments (Tr. 54). He was currently reading at the second grade level (Tr. 54). He attended after school tutoring classes four days a week (Tr. 54-55). Plaintiff helped him with his homework assignments, noting that Claimant would become frustrated when attempting to finish his homework independently (Tr. 55).

Plaintiff stated that her son's household chores included keeping his room neat, emptying the trash, vacuuming, and folding clothes, but that he did not perform the activities well (Tr. 55). Claimant argued with his next youngest two brothers but related well to the youngest one (Tr. 55). He did not experience behavioral problems or difficulty in self care activities (Tr. 56). Plaintiff opined that her son experienced deficiencies in both understanding and completing tasks (Tr. 56). She pointed out that Claimant's younger brother, currently in second grade, helped Claimant with his math assignments (Tr. 57).

In response to questioning by her attorney, Plaintiff stated that her son was currently taking the psychotropic medications of Concerta, Risperdal, and Trileptal (Tr. 59). She

stated that without medication, her son would typically stay up until one or two in the morning (Tr. 59).

### C. Medical and Academic Evidence[2]

### 1. Treating Sources

March, 2005 treating records by pediatric neurologist Ahmad Kaddurah, M.D. note the February, 2004 onset of seizure activity (Tr. 134). The notes state that Claimant had not experienced seizures since May, 2004 (Tr. 134). Plaintiff reported to Dr. Kaddurah that her son was hyperactive (Tr. 134). Dr. Kaddurah recommended a psychiatric evaluation (Tr. 134-135).

March, 2007 psychiatric intake records by Insight Recovery Center note that Plaintiff reported that Claimant broke objects at home and fell asleep after school but would not sleep at night (Tr. 158). Claimant was assigned a GAF of 32[3] (Tr. 152). May, 2007 discharge records state that Claimant only attended three times and that the sessions were "chaotic" due to demands placed on Plaintiff by younger siblings (Tr. 147). The therapist opined that "[b]ehavior problems at home appear[ed] to be due to emotional neglect [and] poor parenting" (Tr. 147). The therapist noted that Plaintiff "did not not make herself available [and] only wanted medication" (Tr. 147).

---

[2] Plaintiff's arguments for remand pertain exclusively to Claimant's mental conditions. Records related to his physical condition have been reviewed but are omitted from discussion.

[3] A GAF score of 31–40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders*, 34 (" DSM–IV–TR ") (4th ed.2000).

-4-

December, 2008 intake notes by social worker Jeff Fulton for Catholic Charities state that Claimant spoke softly with "one word responses" (Tr. 202). Fulton noted that Claimant appeared hyperactive and impulsive but was fully oriented (Tr. 196, 202). He assigned Claimant a GAF of 55[4] (Tr. 200). In March, 2009, Dr. Ahmad noted that Claimant's history of seizures had resolved (Tr. 206).

A medication log by Catholic Charities shows that Claimant received psychotropic medication from May, 2009 through January, 2011 (Tr. 330-331). July, 2009 medication review notes state that Claimant had recently become more aggressive (Tr. 310). In May, 2010 Ellen Johnson, D.O. assigned Claimant a GAF of 40 (Tr. 275). A July, 2010 medication review states that Claimant continued to experience tantrums despite participation in a summer school program (Tr. 269). A September, 2010 medication review states that Claimant was doing well in school "except math" (Tr. 257).

### 2. Non-Treating Sources

August, 2006 speech language pathology testing by Barbara Cummulaj, M.A. found that Claimant's language skills "would not impact educational performance"(Tr. 137). However, Claimant's composite language score was one-and-a-half to two years below the mean for his age group (Tr. 137).

In July, 2009, Darlene Doerscher, M.A. performed a consultative examination of Claimant on behalf of the SSA (Tr. 209-213). Plaintiff reported that her son had temper tantrums and difficulty completing tasks (Tr. 209). Doerscher noted that Claimant exhibited an organized thought process and normal speech and affect (Tr. 211). Claimant's score in

---

[4]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR* )(4th ed.2000).

verbal comprehension was "extremely low" with a a full scale IQ in the "borderline range" (Tr. 212). Doerscher found "a strong indication of a learning disorder added with frustration and problems stemming from the family home" (Tr. 213). She assigned Claimant a GAF of 46[5] (Tr. 213). The following month, Barbara Cunmulaj conducted a speech and language evaluation, concluding that Claimant's "receptive and expressive language deficits could impact educational performance" (Tr. 216).

Also in August, 2009, Paul Liu, D.O. conducted a non-examining evaluation of the treating and consultative records, finding that Claimant experienced marked limitation in Acquiring and Using Information; less than marked limitation in Attending and Completing Tasks and Interacting and Relating With Others; no limitation in Moving About and Manipulating Objects; and less than marked limitations in Caring for Yourself and Health and Physical Well-Being (Tr. 233). Dr. Liu noted that Claimant's language skills were in the "very low range of functioning" (Tr. 235). He observed that results of a questionnaire administered to Plaintiff undermined her credibility as to her son's abilities (Tr. 235).

### 3. Medical Records Submitted After the March 29, 2011 Decision

On April 26, 2011, Claimant was deemed eligible for IEP in the areas of mathematic calculation and mathematics problem solving but did not qualify for special education in speech or language skills (Tr. 335, 340). Test results show that he scored in the second percentile in concepts and following directions and the third percentile in "broad math" skills (Tr. 338). The report also stated that "Social Work Services are recommended at this time on a consultative basis to address conflicting interpersonal relationship issues" (Tr. 340).

---

[5] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders* at 34 ("*DSM-IV-TR*")(4th ed.2000).

School records from the 2009-2010 school year by teacher Carolyn Hudson state that Claimant showed "good citizenship in the classroom" and was able to follow "classroom and school rules consistently" (Tr. 354). Hudson noted that Claimant "[had] difficulty expressing himself" and required "a lot of assistance" (Tr. 354).

### D. The ALJ's Decision

Citing the medical records submitted as of the date of his decision, ALJ Bunce found that Claimant experienced the severe impairments of ADHD and depression but that the conditions did not meet or equal any listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 17-18). He found that in the domain of "Acquiring and Using Information," Claimant had "less than marked limitation" (Tr. 20). In the domain of "Attending and Completing Tasks," he found "less than marked limitation" (Tr. 22). In the domain of "Interacting and Relating to Others," the ALJ also found that Claimant had "less than marked" limitations (Tr. 22-23). The ALJ found no limitations in the domain of "Moving About and Manipulating Objects" (Tr. 24), "Caring for Yourself" (Tr. 25), or "Health and Physical Well-Being" (Tr. 25-26).

In the domain of Acquiring and Using Information, the ALJ acknowledged the finding of marked limitations by Dr. Liu, but noted that Claimant had "been held back only once, in kindergarten, and to date [] has not had an Individualized Education Plan" (Tr. 19 citing Tr. 233). The ALJ noted that while an IEP had been requested, "no decision was made" (Tr. 19). As to the domain of Attending and Completing Tasks, the ALJ observed that a December, 2010 report card showed good marks "except for mathematics" (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

### **Childhood Benefits**

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[6] In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20

---

[6] Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

C.F.R. § 416.924(a). In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for yourself; and,
>
> (vi) Health and physical well-being.
>
> 20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added). 20 C.F.R. § 416.926a(e)(3).

## **ANALYSIS**

Plaintiff argues, in effect, that Claimant's psychological symptoms warrant a disability finding. *Plaintiff's Brief* at 7-12*, Docket #8.* She contends that the ALJ erred by failing to consider the import of the records created by Claimant's treating sources. *Id.*

**A. Evidence Before the ALJ Supports the Non-Disability Finding**

Citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541 (6th Cir. 2004), Plaintiff asserts that the ALJ consider treating source observations when making the disability finding. *Plaintiff's Brief* at 7-12. She cites Dr. Kaddurah's observation of autistic features (Tr. 135), Insight Recovery intake records showing a GAF of 32 (Tr. 147), and Catholic Charities records stating that Claimant was hyperactive and impulsive (Tr. 198-199).

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson v. Commissioner of Social Sec.,* 378 F.3d 541, 544 (6th Cir.2004)). "If the opinion of a treating source is not accorded controlling weight, an ALJ must consider "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Wilson,* at 544. In addition, "the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011)(citing 20 C.F.R. § 404.1527(c)(2)).

Plaintiff's argument that the ALJ erred by declining to adopt the opinion of a treating source is unavailing. First, as noted by the ALJ, "no medical source stated that [C]laimant's condition is equivalent in severity to the criteria of any listed impairment" (Tr. 17). While Dr. Kaddurah noted the presence of autistic features, he went on to state that Claimant did "not seem

to have all the features of autism," and in any case recommended a psychological evaluation for a diagnosis (Tr. 135). While a social worker employed by Insight Recovery assigned Claimant a GAF of 32, the record states that he was seen on only three occasions over a two-month period (Tr. 147). Further, the social worker does not constitute an "acceptable medical source" for purposes of 20 C.F.R. § 404.1527(c)(2) and thus, her opinion was entitled to no special deference. SSR 06-03p, 2006 WL 2329939, *2 (2006). Catholic Charities records stating that Claimant was impulsive, by itself, does not imply a disability finding.

Second, substantial evidence supports the ALJ's finding that Claimant did not experience marked limitation in two domains or an extreme limitation in one. December, 2008 intake notes by Catholic Charities found hyperactivity, but determined that the condition created only moderate limitation (Tr. 200). In August, 2009, speech pathologist Barbara Cunmulaj observed that claimant was cooperative with "adequate attending skills," and "good eye contact" with appropriate verbal interaction (Tr. 214). Plaintiff faults the ALJ for finding less than marked limitations in Attending and Completing Tasks, noting that Dr. Liu found the presence of marked limitations in this domain (Tr. 233). However, Dr. Liu's "marked" finding is somewhat undermined by the fact that the checkmark he placed in the "marked" box of this domain contradicts his later statement that "All domains are less than markedly limited" found in the conclusion of the same assessment (Tr. 235). Moreover, the presence of a marked limitation in just one of the six domains is insufficient to establish disability. 20 C.F.R. § 416.926a(b)(1). For these reasons, the ALJ did not err in finding that Claimant was not disabled.

**B.  Evidence Submitted Subsequent to the ALJ's Decision**

Notwithstanding substantial evidence supporting the administrative determination, evidence submitted for Appeals Council review *subsequent* to the administrative decision has at least a reasonable possibility of altering the ALJ's determination.  Claimant is thus entitled to a "Sentence Six" remand.

Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."  Material that was not contained in the administrative transcript before the ALJ and is not duplicative of formerly submitted records is "new." *Street v. Commissioner of Social Security*, 390 F.Supp.2d 630, 641–642 (E.D.Mich.2005).

Material submitted subsequent to the administrative decision is subject to a narrow review by the district court.  *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993).   The district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96.   Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Among the new evidence is an April 26, 2011 IEP evaluation result stating that Claimant was eligible for special education (Tr. 335, 338, 340).  Test results included in the evaluation place Claimant's mathematical skills as low as the second or third percentile in his age group (Tr. 338).  The evaluation states that in addition to special education placement, "Social Work Services" were recommended to address Claimant's interpersonal conflicts (Tr. 340).  These findings are particularly significant, given that only one month earlier, the ALJ justified his non-disability determination by noting that "to date," Claimant "has not had an . . . IEP" as well as the

absence of evidence supporting the need for special education (Tr. 19). Because the IEP recommendation was based in large part on Claimant's condition prior to the March 29, 2011 administrative decision, and a reasonable possibility exists that it would change the ALJ's findings, it is "material" to the determination of non-disability. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994). The fact that some portions of the newer evidence would support the non-disability finding, *i.e.,* Claimant's language deficiencies not sufficiently severe to qualify for special education in that area (Tr. 340) and good marks in citizenship for the previous school year (Tr. 354), is of no import given the presence of other evidence likely to change ALJ Bunce's original determination.

Moreover, the fact that the relevant evidence was not created until four weeks after the administrative decision constitutes "good cause" for its tardy submission. *Street,* 390 F.Supp.2d at 641(citing *Cotton*, 2 F.3d at 696). The failure of Plaintiff's counsel to request a Sentence Six remand does not prevent the court from granting such relief *sua sponte*. *Id.* at 640-641 (citing *Igonia v. Califano*, 568 F.2d 1383, 1387 (D.C.Cir.1977)("[w]hile a remand request is normally made by a party, there is no reason why a court may not order the remand *sua sponte*"); see also *Clark v. Callahan*, 1998 WL 512956, *1 (S.D.N.Y.1998)(*sua sponte* relief permissible without notice to parties "in a social security context"). Defendant contends that Plaintiff has waived unraised arguments. However, in light of viable grounds for remand, the undersigned is unwilling to allow Claimant to bear the brunt of his counsel's shortcomings. See *Bailey ex rel. J.L.M. v. Commissioner of Social Sec.,* 2013 WL 2295734, *9 (E.D.Mich.2013)(Grand, M.J.)(applicant for childhood benefits "should not be penalized for his counsel's unconscionable failing"). Moreover, in *Wright v. Comm. of Soc. Sec.*, 2010 WL 5420990 (E.D. Mich. 2010), Judge Friedman, citing *Kenney v. Heckler*, 577 F.Supp. 214 (N.D. Ohio 1983), held that the plaintiff in a Social Security case is not even required to file a summary judgment motion, and

once he has filed his complaint, "he has done all that is required of him by § 405(g)." *Wright* at *3.

Because the evidence submitted to the Appeals Council is new and material and good cause exists for its late submission, a remand under the sixth sentence of § 405(g) is appropriate.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that in lieu of granting Plaintiff's Motion for Summary Judgment at this time, the case be remanded to the administrative level pursuant to the sixth sentence of § 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by

motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: October 31, 2013

**CERTIFICATE OF SERVICE**

I hereby certify on October 31, 2013, I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on October 31, 2013: **None**


s/Terri L. Hackman
Judicial Assistant to
Magistrate Judge R. Steven Whalen
(313) 234-5115